## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.     JACKIE D. POTTS,       ) | |
|             Plaintiff,       ) | |
| v.                    ) | Case No. CIV-15-608-HE |
| 1.     GEFCO, INC.,          ) | JURY TRIAL DEMANDED |
|            Defendant.     ) | ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW THE PLAINTIFF,** and for his causes of action, herein alleges:

### PARTIES

1.  The Plaintiff is Jackie Potts, an adult female who resides in Garfield County, Oklahoma.

2.  The Defendant is GEFCO, Inc., a domestic for-profit corporation doing business in Garfield County, Oklahoma.

### JURISDICTION AND VENUE

3.  Plaintiff's action is for gender discrimination and disability discrimination (including hostile working environment and retaliation after Plaintiff complained of discrimination) in violation of the Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act as amended and the OADA. Plaintiff also brings a cause of action for retaliation for filing a workers' compensation claim in violation of the Oklahoma Workers' Compensation Act (85A O.S. §§1 et seq).

4.  Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331, and 42 U.S.C. §12111, *et seq.,* 42 U.S.C. § 2000e-5(f), and 25 O.S. §§ 1101, *et seq.* The state law claims arise out of the same core of facts and jurisdiction over them is vested under 28 U.S.C. § 1367(c).

5.  All of the actions complained of occurred in Garfield County, Oklahoma, and the

1

Defendant may be served in that county. Garfield county is within the Western District of the United States District Court of Oklahoma, and venue is appropriate in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

6. Defendant has fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Accordingly the Defendant is a covered employer under Title VII and the ADA.  There is no minimum employee requirement to be a covered employer under the OADA.

7. Plaintiff was employed by the Defendant as a Machinist from approximately October 10, 2011 until approximately December 18, 2014.

8. Plaintiff was qualified for her job and performed her job duties satisfactorily.

9. On or about January 6, 2014, Plaintiff sustained an on-the-job injury to her back arising out of and in the course of her employment with the Defendant and notified Mark Bundy (Supervisor) of her injury.

10. On or about January 10, 2014, Plaintiff obtained medical treatment for her on-the-job injury and was released to return to work with a 20lb. weight lifting restriction.

11. Despite such restrictions, Plaintiff was able to perform her regular job duties with or without accommodation.

12. When Plaintiff returned to work on January 10, 2014, she informed Michael Pocorny (Safety Officer) of the medical treatment recommended by her doctor and her work restrictions. Plaintiff also requested the accommodation of alternating between sitting and standing every 30-45 minutes to alleviate the pain caused by her medical conditions.

13. Mr. Pocorny expressed displeasure  with Plaintiff's medical condition by way of his words and actions and  requested that Plaintiff not fill the medications her doctor had prescribed so Defendant would not have to "turn in paperwork" or "file it with

2

insurance".

14.   When Plaintiff proceeded to fill her prescriptions that week, Mr. Pocorny retaliated against the Plaintiff by removing her from performing her regular job duties as a Machinist and informed Plaintiff she would have to "count paperclips or something".

15.   As a result of the injuries above, para 9, Plaintiff suffers from impairments, which without regard to remedial effects of mitigating measures, substantially limits one or more major life activities including, but not limited to, lifting, sitting, and standing.

16.   At the least, the Defendant perceived Plaintiff as being disabled as they refused to allow Plaintiff to perform her regular job duties due to her medical treatment and medical restrictions.

17.   On or about May 6, 2014, Plaintiff suffered a second on-the-job injury which affected her right shoulder and her ability to use her right arm.

18.   Plaintiff reported the injury but was told by Mr. Pocorny to not fill out an accident report and to not go see a doctor. After Plaintiff insisted multiple times, she was finally given an accident and injury report which she completed.

19.   Around May 8, 2014 Plaintiff obtained medical treatment for her second on-the-job injury and requested to return to work with light duty restrictions and the reasonable accommodation of a sling for her right arm that was provided by her doctor.

20.   Mr. Pocorny denied Plaintiff's request to operate the machine with a sling because it was considered "extra clothing", however there was no rule prohibiting Plaintiff from operating a machine with a sling. By this action, Defendant refused Plaintiff's request to return to work with the reasonable accommodation of an arm sling and refused to engage in an interactive process regarding potential reasonable accommodation.

21.   On or about May 19, 2014, Plaintiff filed an internal grievance against Mr. Pocorny regarding harassment for her injury and inadequate medical care.

22.   On or about June 11, 2014, Plaintiff's doctor informed Plaintiff that she was no longer

required to wear a sling for her right arm. As a result, Plaintiff requested to return to her regular job duties of operating a machine but Defendant denied such request.

23.   On or about June 15, 2014, Plaintiff requested a meeting with Defendant's management regarding her complaint of a hostile environment based on inadequate medical care and harassment from Mr. Pocorny.

24.   On or about July 17, 2014, Plaintiff filed a pro-se charge of discrimination with the Equal Employment Opportunity Commission (EEOC) asserting gender discrimination and retaliation.  Plaintiff received a right to sue on this charge on or about July 25, 2014 but decided not to pursue this action.

25.   On or about August 20, 2014, Plaintiff had a surgical consult and was returned to work on light duty with limited use of her right arm.

26.   Plaintiff returned to work on August 20, 2014 and informed Defendant of her light duty restrictions and the doctor's recommendation that surgery would be necessary to treat the medical conditions caused by her on-the-job injury.

27.   Following August 20, 2014, Defendant retaliated against Plaintiff in the following manner:

   A.   Plaintiff was denied access to women's restroom

   B.   Plaintiff was informed by Kevin Watson (Machinist Supervisor) that she was not allowed to speak with other employees

   C.   Plaintiff was banned from being on the side of the shop with machinists

   D.   Plaintiff was harassed and bullied by Kevin Watson who made offensive remarks on a daily basis

28.   Plaintiff repeatedly objected to the harassment but Defendant made no effort to correct any of the conditions creating a hostile work environment.

29.   On or about October 15, 2014, Plaintiff was brought to a meeting with management in which management stated it had investigated her complaints and found that they

4

were unsubstantiated. Management also claimed that their findings were supported since the EEOC had dismissed her charge of discrimination and denied her claims of harassment and discrimination. Plaintiff responded by correcting management about the significance of the EEOC's dismissal letter and that it meant she had a right to file a lawsuit against the company.

30. Following the meeting on October 15, 2014, Defendant continued to retaliate against the Plaintiff in the following manner:

    A.     Plaintiff was banned from the office

    B.     Plaintiff suffered a reduction in hours

    C.     Plaintiff's requests for training and cross-training were denied

    D.     Plaintiff was forced to work outside of her medical restrictions

    E.     Defendant ignored Plaintiff's request for a lower computer table to accommodate her shoulder injury

31. Discrimination on the basis of a disability or perceived disability and retaliation for Plaintiff's requests for accommodation is contrary to the ADA and the OADA.

32. On or about December 10, 2014, Defendant's Board Members made an on-site visit. During this visit, one Board Member approached Plaintiff and engaged her in conversation regarding her opinion of the company.

33. On or about December 10, 2014, Plaintiff informed a Board Member that she felt Defendant was a "chauvinistic company" and "ran by the good old boy system".

34. On or about December 15, 2014, Plaintiff was called in for a meeting with management because of the opinions she had expressed to the Board Member on or about December 10, 2014. On the same day it was claimed by Defendant that Plaintiff was working outside her restrictions.

35. On or about December 16, 2014, Plaintiff complained to Aron Harmon (President) about the discrimination, harassment and retaliation she had been subjected to during

the past several months due to her gender and medical conditions. Plaintiff also provided Mr. Harmon with examples to support her opinion that the company was run by a good ole boy system.

36.  As background evidence, Plaintiff's opinion was based on events including, but not limited to the following:

    A.  Plaintiff had been told she could not operate the larger machines because they were for men and she would break them because she was a woman

    B.  Plaintiff had previously been told that the Defendant only hired women because "they lay down and keep their mouth shut"

    C.  Plaintiff was not considered for promotions to positions to which she was qualified for and such positions were given to lesser qualified and experienced males

    D.  Defendant had double standards with female machinists in that the Defendant was very strict with the requirements for a female machinist to be increased in rank and pay while being significantly more lenient with these requirements for a male machinist.

37.  On or about December 17, 2014, Plaintiff complained to Mr. Pocorny about being forced to worked on machines against her restrictions.

38.  On or about December 18, 2014, Plaintiff was terminated from her job for supposedly saying untrue things about her employer. Plaintiff protested Defendant's reasons for termination and stated "you're terminating me because I gave my honest opinion to a Board Member". Defendant did not deny Plaintiff's statement.

39.  The Defendant's act of terminating the Plaintiff for expressing her opinion that the Defendant was a chauvinistic company and run by the good ole boy system is contrary to Title VII.

40.  At the least motivating factors in the decision to terminate the Plaintiff were

Plaintiff's gender and complaints of gender discrimination in violation of Title VII and state law, and Plaintiff's disability (actual or perceived) and requests for accommodation in violation of the ADA and state law, with another significant factor being retaliation for filing a workers' compensation claim.

41.   As the direct result of actions taken by Defendant and its agents, Plaintiff has suffered and continues to suffer lost wages, benefits, and emotional distress damages including stress, anxiety, worry, embarrassment, humiliation and similar unpleasant emotions.

42.   Plaintiff has exhausted her administrative requirements by timely filing a pro-se charge of discrimination with the EEOC on February 9, 2015. The EEOC issued Plaintiff her right to sue letter on March 9, 2015, and Plaintiff received such letter thereafter. This complaint is timely filed within ninety days of Plaintiff's receipt of her right to sue letter.

## COUNT I

For Plaintiff's first cause of action, she incorporates the allegations set forth above and further provides that:

43.   The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender-based discrimination, retaliation and a hostile work environment.

44.   As a result of Defendant's actions, Plaintiff suffered lost wages (past, present and future, as well as for the value of benefits associated with such earnings) and dignitary harms including worry, embarrassment and other similar emotions for which she is entitled to compensation.

45.   Because the actions of the Defendant were willful, malicious, or at the least, in reckless disregard for Plaintiff's state protected rights, Plaintiff is entitled to an award of punitive damages as provided by the Civil Rights Act.

7

## COUNT II

For Plaintiff's second cause of action she incorporates the allegations set forth above and further provides that:

46.    For the reasons set out above, Plaintiff is a disabled person within the meaning of the Americans With Disabilities Act as Amended (ADAA).  Discrimination on the basis of a disability, failure to provide a reasonable accommodation and retaliation for requesting reasonable accommodations is contrary to the ADA and Oklahoma's Anti-Discrimination Act.

47.    Under the ADA, Plaintiff is entitled to compensation for her lost earnings, past, present and future (and for the value of the benefits associated with such earnings), dignitary harm damages, and attorney fees and costs.

48.    Because the actions of the Defendant were willful, malicious, or at the least, in reckless disregard for Plaintiff's federally and state protected  rights, such that Plaintiff is entitled to an award of punitive damages under federal law.

49.    Under the Oklahoma Anti-Discrimination Act (OADA) Plaintiff may recover liquidated damages

## COUNT III

For Plaintiff's third cause of action, she incorporates the allegations set forth above and further provides that:

50.    At the time of her termination, Plaintiff was known by the Defendant to have suffered a workers' compensation injury as defined under the Workers' Compensation Act (WCA).

51.    Defendant terminated Plaintiff's employment because she had suffered an injury and instituted or caused to be instituted proceedings under the WCA,  and retaliation for such injury and claim is a violation of the WCA.

52.    As a result of Defendant's actions, Plaintiff suffered lost wages (past, present and

8

future, as well as for the value of benefits associated with such earnings) and dignitary harms including worry, embarrassment, and other similar emotions for which she is entitled to compensation.

53. Because the actions of the Defendant were willful, malicious, or at the least, in reckless disregard for Plaintiff's state protected rights, Plaintiff is entitled to an award of punitive damages under Oklahoma law.

**WHEREFORE,** Plaintiff prays that she be granted judgment in her favor and against the Defendant on all of her claims, and that this Court grant the Plaintiff all available compensatory damages, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 2nd DAY OF JUNE, 2015.**

s/ Christine Coleman Vizcaino
Mark Hammons, OBA No. 3784
Christine Coleman Vizcaino, OBA No. 30527
HAMMONS, GOWENS, HURST
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: christine@hammonslaw.com
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED
*Counsel for Plaintiff*